## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

ROBERT LAUREN CURLEE,

        PLAINTIFF,

v.                                                    CIVIL ACTION NO.:

PENSACOLA BAY SUPPORT
SERVICES, LLC,

        DEFENDANT.

_____/

## **COMPLAINT**

Plaintiff, Robert Lauren Curlee, (hereinafter referred to as the "Plaintiff" or "Curlee"), by and through her undersigned attorney, sues defendant, Pensacola Bay Support Services, LLC, (hereinafter referred to as the "Defendant" or "PBSS") and alleges as follows:

### *INTRODUCTION*

1.      Plaintiff brings this action to remedy acts of discrimination and retaliation pursuant to the provisions of the Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq.; the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203 and its amendments of 2008; and Family Medical Leave Act, 29 U.S.C.S. §§ 2601; 2611-2654.

### *JURISDICTION AND VENUE*

2.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f).

3.     Defendant, PBSS, is considered an employer within the terms and conditions of the 29 USC §§ 2611 et seq. ("FMLA"), as Defendant, PBSS, was both engaged in commerce or in an industry or activity affecting commerce and employed more than fifty (50) employees for each working day during each of twenty (20) or more calendar weeks in each calendar year relevant hereto within a seventy-five (75) mile radius of Plaintiff's Pensacola, Florida worksite.

4.     Plaintiff worked for Defendant from January 13, 2020, until August 10, 2021. Plaintiff is considered an "eligible employee" for purposes of the FMLA as she has been employed: (1) for at least 12 months by Defendant, PBSS, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

5.     The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

6.     Declaratory, injunctive, and equitable relief is sought pursuant to 28 U. S. C. §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g).

7.     Costs and attorney's fees are sought pursuant to 42 U.S.C. §2000e-5(k) and Fed. R. Civ. P. 54.

8.     This action lies in the Northern District of Florida, Pensacola Division, pursuant to 29 U.S.C. § 1391(b), because the action arose in this judicial district,

and pursuant to 42 U.S.C. § 2000e-5(f)(3), and because the unlawful employment practices were committed in this judicial district. This court further has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction) as those claims form part of the same case or controversy.

*9.*    All conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f). Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D202200138 and 15D202200140) and Florida Commission on Human Relations ("FCHR" No.: 202231942 and 202231943) on November 3, 2021.[1] On May 2, 2022, the FCHR issued a determination (in both charges) pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested his ninety (90) day Notice of Right to Sue letter from the EEOC which was received (for both charges) on July 14, 2022.

## *PARTIES*

10.   Plaintiff is a Caucasian female and a citizen of the State of Florida, who resides in Pensacola, Florida.

---

[1] Two identical charges of discrimination were filed, and date stamped by the FCHR on November 3, 2021 @ 4:50 pm, with each charge being given a separate charge number. Charge numbers 15D202200138 and 202231942, are associated with Pensacola Bay Support Services. Charge numbers 15D202200140 and 202231943, are associated with IAP Worldwide Services, Inc. The two (2) charges contain the same writing but were served on two (2) different legal entities. In these identical charges, Plaintiff alleged Gender/Sexual Harassment, Retaliation – Disability and Other – Hostile work environment claims. Plaintiff was employed by Pensacola Bay Support Services, LLC. PBSS, a Delaware limited liability company, is a subsidiary of IAP World Services, Inc., a Florida Corporation. IAP World Services, Inc., is a wholly owned subsidiary of IAP Worldwide Services, Inc. a Delaware Corporation. The FCHR issues determinations on each of these charges on May 2, 2022, and the Plaintiff's EEOC ninety (90) day Right to Sue letters for each of these charges were not received until July 14, 2022.

11.     Defendant, Pensacola Bay Support Services, LLC, ("PBSS") is a subsidiary of IAP World Services, Inc., a Florida Corporation. IAP World Services, Inc., is a wholly owned subsidiary of IAP Worldwide Services, Inc. ("IAP") a Delaware Corporation. PBSS is a foreign corporation that does business in the State of Florida, Escambia County.

12.     Defendant, PBSS employs more than 149 employees and is an employer within the meaning of, and as defined in, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as it employees in excess of fifteen (15) employees.

13.     Defendant, PBSS provides Base Operations Support (BOS) services at Pensacola Naval Regional Complex (PNRC) and Naval Hospital Pensacola, Florida. PNRC includes Naval Air Station (NAS) Pensacola, Saufley Field, Corry Station, Bronson Field, and tenant commands. Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799

## *GENERAL FACTS*

14.     Defendant, PBSS is a government defense contractor, and at all times material hereto maintained a government defense contract and operated its business on the United States Navy's Naval Air Station Pensacola ("NAS-Pensacola").

15.     Plaintiff is a 34 year old Caucasian male that has transitioned to a

female, and now identifies as a female.

16.     Plaintiff was employed by IAP Worldwide Services ("IAP") from January 13, 2020, as a HVAC Mechanic 1 until August 10, 2021.

17.     During Plaintiff's employment with IAP, she performed the duties and responsibilities of her position in a satisfactory manner.

18.     Plaintiff is also a disabled veteran who suffers from PTSD.

19.     In April 2021, Plaintiff informed the Defendant that she would be transiting from male to female.

20.     Defendant acknowledged Plaintiff's transition from male to female.

21.     Plaintiff also met with her supervisor, Chris Floda, and informed him that he would be undergoing the process of gender reassignment.

22.     In May 2021, Plaintiff was required to take a few days of PTO to allow her IAP co-workers to be trained and educated on having a transgender co-worker.

23.     Starting in the June 2021, Plaintiff was subjected to gender, sexual orientation and gender stereotyping discrimination, harassment and retaliation by her direct supervisor, Chris Floda.

24.     On June 25, 2021, Plaintiff received the voicemail message from Christopher Floda where he made derogatory and discriminatory comments of regarding Plaintiff's transgender status.

25.    Mr. Floda's voicemail consisted of several comments including, "this mother fucker ain't got laid in a little bit, know what I'm saying? She was off for them few days, came back wearing a wig, lipstick. The feet ain't changed, the height. Tell me what your wife wears, skinny jeans. Not work jeans like you used to wear wranglers, cuz. Used to look ragged as fuck. Come to work, like she's in a fucking office."

26.    Mr. Floda then admittingly is retaliating against Plaintiff when he says, "I put that mother fucker on a rooftop for eight hours. Mr. Floda can be heard speaking to a Shawn (Hathaway) who was laughing in the background. Mr. Floda continued speaking, I (Mr. Floda) was like, welcome back, Monday morning. Hey Curlee, I need you to do this. There are 47 package units on the rooftop. I need you to go verify the model and serial numbers of the assets. She was up there for like three hours. Change the filters too while you're up there. That's fucked up, that's bad leadership, you know, but, I'm in a bad mood, I gotta deal with her shit. Its Monday."

27.    Plaintiff reported the issues to HR, but nothing was done about it.

28.    Almost instantly the day Plaintiff came to work as herself, Lauren Samantha Curlee, there were statements made to her that many of the co-workers felt that this condition was contagious. Avoidance is one word, but when Plaintiff

6

would just merely pass in the hallway, her co-workers would overtly turn their heads away from her and just looking down.

29.    Plaintiff tried to just brush this off for a while; give some of them some time to adjust. However, no adjustment was ever made. It was like Plaintiff was an alien in the workplace.

30.    With regards to Plaintiff's promotion testing, she was curious as to why the "testing" was constantly postponed for well over one month.

31.    When the time came for the advancement testing, no HR representative was present, which is not the normal company procedure.

32.    Upon discussing the test and testing procedures with John Tran, he stated that it was a very odd test that had never been done before.

33.    This test was organized by, Chris Floda, Nels Palm (department head), and Travis Schafer and administered by individuals with absolutely ZERO Human Resources representation and proctoring.

34.    Also, when Plaintiff requested the test be reviewed for fairness and accuracy via the senior Level 3 Mechanic, John Tran, to Amy Flaharety (HR), Plaintiff never received a response to the review request.

35.    Chris Floda continued his discrimination and retaliation of Plaintiff by reducing Plaintiff's work hours.

36.     Mr. Floda informed Plaintiff that she could not now work outside of the "normal" business hours as workers comp will not cover her if she worked outside these hours.

37.     After being told this by Mr. Flora and because of the continued discriminatory treatment she was experiencing in the workplace, Plaintiff's stress level was elevated and her PTSD began to flare up.

38.     Plaintiff immediately communicated this to Defendant's HR representative to start the FMLA process and a workplace accommodation. Plaintiff sent an e-mail to Amy Flaherty (HR) stating that she no longer felt safe or comfortable continuing to work underneath Christopher Floda and in the HVAC department.

39.     Plaintiff requested FMLA paperwork or an accommodation from Amy Flaherty and wanted to discuss FMLA leave for various health issues including her PTSD and a medication change.

40.     Plaintiff informed Ms. Flaherty that she wanted to send a request for FMLA from her doctor, Dr. Patricia Lyle, at the VA who was recommending that she take time off.

41.     Amy Flaherty never did acknowledge or respond to Plaintiff's request.

42.     On August 10, 2021, Plaintiff's employment was terminated.

### *FIRST CAUSE OF ACTION*
*(Title VII - Gender Discrimination)*

43.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 9 through 12; 14 -36 and 42 of this complaint with the same force and effect as if set forth herein.

44.     Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her gender in violation of the Title VII of the Civil Rights Act of 1964.

45.     Plaintiff is a Caucasian female.

46.     While employed by Defendant, Plaintiff transitioned from male to female and now identifies as a female.

47.     Defendants' employees and management continued to treat Plaintiff (female) differently (sexual orientation) and discriminate against her because of this transition.

48.     Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult, as the result of Defendant's continued failure to address and stop the harassment and discrimination of Plaintiff (female) working at Defendant's Pensacola Bay Support Services, LLC, ("PBSS") by male co-workers and management.

49.     The harassment of Plaintiff effected the terms and conditions of her employment as she was held to a different standard than the male employees.

50.     Plaintiff is now suffering and will continue to suffer irreparable injury

and monetary damages as a result of Defendant's discriminatory practice unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
*(Title VII- Gender Retaliation)*

51.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 9 through 12; 14 -36 and 42 of this complaint with the same force and effect as if set forth herein.

52.    Defendant retaliated against Plaintiff for availing herself of the protections afforded her pursuant Title VII of the Civil Rights Act of 1964.

53.    While employed by Defendant, Plaintiff transitioned from male to female and now identifies as a female.

54.    Defendants' employees and management continued to treat Plaintiff (female) differently (sexual orientation) and discriminate against her because of this transition.

55.    Between June and August, 2021, Plaintiff was singled out, harassed and retaliated against after having communicated to Defendant of her transition from male to female.

56.    Plaintiff's hours were reduced and she was denied an opportunity promotion as her supervisor changed the testing requirements.

57.    Plaintiff reported these actions and the other discriminatory conduct of Defendant's employees, but no action with taken to remedy the conduct.

58.     Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult, as the result of Defendant's continued failure to address and stop the harassment and discrimination of Plaintiff (female) working at Defendant's Pensacola Bay Support Services, LLC, ("PBSS") by male co-workers and management.

59.     Plaintiff engaged in activity protected by Title VII when she objected to and complained the continued retaliatory treatment of her by PBSS supervisors and co-workers.

60.     After having reported this activity to Defendant, the harassment and intimidation continued.

61.     Plaintiff's retaliatory termination on August 10, 2021, was a result of availing herself of this protected activity and was in violation of the Title VII of the Civil Rights Act of 1964.

62.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practice unless and until this Court grants relief.

### THIRD CAUSE OF ACTION
### (FMLA INTERFERENCE)

63.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 3 through 5 and 10; 11 and 14 and through 42 of this complaint with the same ; force and effect as if set forth herein.

11

64.   "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

65.   Plaintiff was an employee entitled to a benefit under the FMLA and Defendant denied her that benefit.

66.   At the time of Plaintiff's termination, Defendant had more than sufficient knowledge that Plaintiff was entitled to FMLA leave.

67.   Defendant had more than sufficient knowledge that her PTSD was a serious health condition and an FMLA-qualifying medical condition.

68.   Defendant knew of Plaintiff's qualifying medical condition and refused to discuss any type of FMLA leave.

69.   Defendant should have notified Plaintiff of her eligibility to take FMLA leave for her PTSD and other medical conditions within five business days.

70.   The FMLA required Defendant to give Plaintiff written notice detailing her specific expectations and obligations related to the FMLA and explaining any consequences of her failure to meet these obligations.

71.   Defendant never provided Plaintiff with any type of written notice regarding her FMLA rights related to her PTSD, depression and anxiety, thus interfering with and denying her substantive rights under the FMLA.

12

*72.*    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

### FOURTH CAUSE OF ACTION
(*DISABILITY DISCRIMINATION* - Rehabilitation Act of 1973, 29 U.S.C.S. §§701-799)

73.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 10; 11; 13 through 22 and 37 through 42 of this complaint with the same force and effect as if set forth herein.

74.     The Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799, prohibits employers from discriminating against qualified individuals because of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

75.    At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799.

76.    At all times material hereto, Defendant was an employer within the meaning of Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799.

77.    Defendant had knowledge of Plaintiff's disability and anxiety, depression and military related PTSD diagnosis when she informed Defendant of her disability.

78.    Plaintiff is a former military service member that with a VA PTSD

diagnosis and rating and is also a qualified individual with a disability as she has a physical impairment that substantially limits one or more major life activities.

79.    Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

80.    Plaintiff had the ability to perform the essential functions of her position and did so without incident until she was terminated by Defendant.

81.    Defendant knew of Plaintiff's medical condition and refused to discuss an accommodation as requested by her.

82.    Defendant knew it was continuing to place Plaintiff in a working environment that was exacerbating her chronic anxiety and PTSD.

83.    Because of Defendant's intentional failure to accommodate her disability, her condition worsened.

84.    Any possible assertion that there was a viable business justification for the Plaintiff's termination is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

85.    The adverse personnel action, the termination of Plaintiff's employment, clearly violated Plaintiff's right under the Rehabilitation Act and such action clearly constituted a prohibited employment practice, contrary to the public policy of the Rehabilitation Act.

86.     As a result of the Defendant's violations of the Rehabilitation Act, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to her discharge from Defendant's employment.

87.     As a result of being wrongfully and unlawfully retaliatory actions that lead to her discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

### FIFTH CAUSE OF ACTION
(DISABILITY RETALIATION – Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799).

88.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 10 through 11 and 14 through 48 of this complaint with the same force and effect as if set forth herein.

89.     The Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799, prohibits employers from retaliating against qualified individuals for requesting an accommodation.

90.     Defendant terminated Plaintiff from her employment in retaliation for requesting and taking medical leave.

91.     At all times material hereto, Plaintiff was an employee of Defendant

within the meaning of Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799.

92.     At all times material hereto, Defendant was an employer within the meaning of Rehabilitation Act of 1973, 29 U.S.C.S. §§ 701-799.

93.     Defendant had knowledge of Plaintiff's disability and anxiety, depression and military related PTSD diagnosis when she informed Defendant of her disability.

94.     Plaintiff is a former military service member that with a VA PTSD diagnosis and rating and is also a qualified individual with a disability as she has a physical impairment that substantially limits one or more major life activities.

95.     Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

96.     Plaintiff had the ability to perform the essential functions of her position and did so without incident until she was terminated by Defendant.

97.     Defendant knew of Plaintiff's medical condition and refused to discuss an accommodation, but instead made her continue to work with her harasser.

98.     Defendant knew it was continuing to place Plaintiff in a working environment that was exacerbating her chronic anxiety and PTSD.

99.     Because of Defendant's intentional failure to accommodate her disability, her condition worsened, resulting in her termination on August 10, 2021.

100. Any possible assertion that there was a viable business justification for the Plaintiff's termination is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

101. The adverse personnel action, the termination of Plaintiff's employment clearly violated Plaintiff's right under the Rehabilitation Act of 1973, 29 U.S.C.S. §§701-799, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the Rehabilitation Act.

102. As a result of the Defendant's violations of the Rehabilitation Act, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to her discharge from Defendant's employment.

103. As a result of being wrongfully and unlawfully retaliatory actions that lead to her discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

### SIXTH CAUSE OF ACTION
*(DISABILITY RETALIATION - AMERICANS WITH DISABILITIES ACT, (ADA)*

104. Plaintiff repeats and re-alleges each and every allegation contained in

paragraphs 9 through 12; 14 -22 and 37 through 42 of this complaint with the same force and effect as if set forth herein.

105.   The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from retaliating against qualified individuals for requesting an accommodation.

106.   Defendant terminated Plaintiff from her employment in retaliation for requesting and taking medical leave.

107.   At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

108.   At all times material hereto, Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, as the Defendant employed more than fifteen "15" employees.

109.   Since Plaintiff's attack, Defendant had knowledge of Plaintiff's disability and anxiety, depression and military related PTSD diagnosis when she informed Defendant of her disability.

110.   Plaintiff is a former military service member with a VA PTSD diagnosis and rating, and is also a qualified individual with a disability, as she has a physical impairment that substantially limits one or more major life activities.

111.   Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

118.   Plaintiff had the ability to perform the essential functions of her position and did so without incident until she was terminated by Defendant.

119.   Defendant knew of Plaintiff's medical condition and refused to discuss an accommodation, but instead made her continue to work.

112.   Defendant knew it was continuing to place Plaintiff in a working environment that was exacerbating her chronic anxiety and PTSD.

113.   Because of Defendant's intentional failure to accommodate her disability, her condition worsened, resulting in her termination on August 10, 2021.

114.   Any possible assertion that there was a viable business justification for the Plaintiff's termination is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

115.   The adverse personnel action, the termination of Plaintiff's employment clearly violated Plaintiff's right under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

116.    As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to her discharge from Defendant's employment.

117.    As a result of being wrongfully and unlawfully retaliatory actions that lead to her discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a)    Declaring the acts and practices complained of herein are violation of the Rehabilitation Act, Title VII, ADA, and FMLA;

b)    Enjoining and permanently restraining those violations of the Rehabilitation Act, Title VII, ADA and FMLA;

c)    Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and

do not continue to affect Plaintiff's employment opportunities;

d)      Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory treatment of her and make her whole for all earnings she would have received but for Defendant's discriminatory treatment, including but not limited to, wages (past and future), pension, and other lost benefits.

e)      Awarding Plaintiff Front Pay in lieu of reinstatement;

f)      Awarding Plaintiff compensatory damages;

g)      Awarding Plaintiff liquidated damages;

h)      Awarding Plaintiff the costs of this action together with a reasonable attorney's fees; and,

i)      Granting such other and further equitable relief as the Court deems just and proper in the premises.

### *DEMAND FOR JURY TRIAL*

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

Dated: October 10, 2022.          By: */s/ Clayton M. Connors*
CLAYTON M. CONNORS
Florida Bar No.: 0095553
Email: cmc@westconlaw.com
THE LAW OFFICES OF
CLAYTON M. CONNORS, PLLC

4400 Bayou Blvd., Suite 32A
Pensacola, Florida 32503
Tel:  (850) 473-0401
Fax: (850) 473-1388
*Attorney for the Plaintiff*